# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JONATHAN KING** | * | CIVIL ACTION |
| Plaintiff, | * | |
| vs. | * | |
| | * | JUDGE |
| **SOUTHERN EAGLE SALES** | * | |
| **AND SERVICE, L.P.** | * | |
| Defendant | * | MAG. JUDGE |
| | * | |
| | * | |
| | * | JURY TRIAL DEMAND |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT FOR DAMAGES

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Jonathan King, who seeks all available relief, including unpaid overtime, lost wages, liquidated damages, and attorney's fees and costs, for the Defendant Southern Eagle Sales and Service, L.P.'s violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and who for a cause of action alleges as follows:

## PARTIES

1.

Jonathan King, Plaintiff herein, is a person of the full age of majority and is a resident of the State of Louisiana, Parish of St. Tammany.

2.

Mr. King, Plaintiff herein, was at all pertinent times an "employee" as that term is defined by 29 U.S.C. § 203(e).

3.

Defendant, Southern Eagle Sales and Service, L.P. ("Southern Eagle"), is a purported non-Louisiana limited partnership who is licensed to do and is doing business in the State of Louisiana. Southern Eagle Sales and Service, L.P.'s general partner is Southern Eagle Sales Management, L.L.C., a Louisiana Liability Company located in Metairie, Parish of Jefferson, State of Louisiana.

4.

Southern Eagle was, at all relevant times, an "employer" as that term is defined by 29 U.S.C. § 203(d).

5.

At all times hereinafter mentioned, Defendant has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

6.

At all times hereinafter mentioned, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated), and therefore, constitutes an enterprise engaged in commerce or in the production of goods for commerce within the meaning of FLSA Section 3(r) and (s), 29 U.S.C. §203 (r) and (s).

7.

At all times hereinafter mentioned, Plaintiff was an employee engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

## JURISDICTION

8.

This Court has jurisdiction over this matter as the amount in controversy exceeds the requisite statutory minimum, involves a citizen of the Parish of Jefferson, State of Louisiana, and the alleged conduct giving rise to the claims set forth herein occurred in the Parish of Jefferson.

## VENUE

9.

Venue is proper in the Parish of Jefferson because the Defendant Southern Eagle Sales and Service, L.P. and its warehouse are located within the 24th Judicial District.

## FACTUAL BACKGROUND

10.

At all material times, Southern Eagle Sales and Service, L.P., (hereinafter, "Defendant" or "Southern Eagle"), acting through its members, agents, officers, directors, employees or others for whom it is legally responsible, maintained and operated a beverage wholesale facility and distribution center in Metairie, Louisiana which serves the New Orleans area and other South Louisiana Parishes.

11.

Part of Southern Eagle's wholesale and distribution business includes its operation of a warehouse in Metairie, Louisiana ("Warehouse").

12.

Mr. King was employed by Defendant from about December 10, 2013 until on or about January 30, 2020.

13.

Mr. King worked for Southern Eagle at its Warehouse at all pertinent times of such employment.

14.

On or about December 10, 2013, Mr. King was hired and employed by Southern Eagle as a "warehouse supervisor."

15.

Mr. King maintained the position or title of "warehouse supervisor" up through and until his unlawful termination on January 30, 2020.

16.

At all pertinent times, Mr. King worked as a "warehouse supervisor" at the Warehouse during the night shift.

17.

At all pertinent times, Southern Eagle misclassified Mr. King as an exempt employee under the FLSA.

18.

Upon information and belief, Southern Eagle misclassified Mr. King as an exempt employee in order to avoid paying him overtime wages.

19.

At all material times, as "warehouse supervisor" Mr. King's primary job duty was manual labor, including performing work involving repetitive operations with his hands, physical skill, and energy.

20.

At all material times, as "warehouse supervisor" Mr. King never possessed the authority to hire and/or fire other employees.

21.

At all material times, Mr. King was paid a salary of approximately $45,200 per year.

22.

At all material times, Mr. King's salary was based on a 40-hour work-week.

23.

At all material times, Mr. King was in fact a full time, non-exempt employee of Southern Eagle.

24.

Mr. King's regular and primary job duties involving manual labor required him to routinely work more than 40 hours each week.

25.

At all pertinent times, Mr. King earned, but did not receive, compensation for hours worked in excess of 40 hours per week due to being misclassified under the FLSA.

26.

As a non-exempt employee who was misclassified by Southern Eagle as exempt, Mr. King is entitled to compensation for any hours he worked in excess of 40 each week at an overtime rate of not less than one and one-half times his regular rate of pay ("overtime").

27.

Mr. King has not been correctly and lawfully compensated his full compensation for the hours he routinely worked each week, including overtime wages for hours worked over 40.

28.

Southern Eagle failed to comply with the FLSA by misclassifying Mr. King as exempt and failing to pay Mr. King his full compensation for the hours he routinely worked each week, including overtime wages for hours worked over 40.

29.

Southern Eagle's policy and practice of misclassifying Mr. King as exempt and failing to correctly pay Mr. King for overtime hours are violations of the FLSA.

30.

This illegal policy and practice was known by Southern Eagle to be in violation of the FLSA.

31.

For example, on, before, about or around January 2017, Mr. King complained to Willie Ball, Southern Eagle's Warehouse Manager at the time, that he needed to be paid as a warehouse worker (manual laborer) for the numerous hours he was working because he was doing the work of a warehouse worker (manual labor) as opposed to a warehouse supervisor.

32.

In voicing his complaint on, before, about or around January 2017, Mr. King told Willie Ball to "put me on the clock" and specifically mentioned that he should be paid overtime for the work he was actually performing.

33.

Willie Ball told Mr. King that he would discuss Mr. King's complaint with Herman Scallan, who was Southern Eagle's Facility Manager at the time.

34.

Upon information and belief, Willie Ball discussed Mr. King's complaint with Herman Scallan.

35.

However, despite Mr. King's complaint reaching Herman Scallan, Southern Eagle's Facility Manager, nothing happened.

36.

After this initial complaint to Willie Ball in January 2017, Mr. King voiced the same or substantially similar complaint to Willie Ball almost every week for the next two years.

37.

Despite his repeated complaints to Willie Ball, Southern Eagle's Warehouse Manager, about not being paid hourly and receiving overtime for the work he was doing as a manual worker, nothing ever happened.

38.

Moreover, as another example of Southern Eagle's knowledge of its misclassification of Mr. King, within about a week or so of his initial complaint to Willie Ball (on or about January 2017), Mr. King complained to Herman Scallan about the long hours he worked each week performing manual labor and that he needed to be paid for the manual work he was actually performing.

39.

However, despite Mr. King's direct complaint to Herman Scallan, Southern Eagle's Facility Manager, nothing happened.

40.

Further, as another example of Southern Eagle's knowledge, on, about or around June 2019, Mr. King complained to Nathan Dixon, who at the time was Southern Eagle's newly hired Warehouse Manager, that he needed to be paid as a warehouse worker (manual laborer) for the numerous hours he was working because he was doing the work of a warehouse worker (manual labor) as opposed to a warehouse supervisor.

41.

In voicing his complaint to Nathan Dixon on, before, about or around June 2019, Mr. King told Nathan Dixon to "put me on the clock" and that he was a warehouse worker and he was not getting paid for that work which required him to work well over 40 hours each week.

42.

In response to his initial complaint, Nathan Dixon told Mr. King that he was trying to get him compensated for the extra hours he worked.

43.

After this initial complaint and subsequent similar complaints up through January 2020, Nathan Dixon repeatedly told Mr. King that he was trying to work on getting him compensated for the extra hours he worked.

44.

Despite his repeated complaints to Nathan Dixon, Southern Eagle's Warehouse Manager and then Director of Warehouse & Facility Operations (as of November 2019), about not being paid hourly for the work he was doing as a manual worker, nothing ever happened.

45.

As another example of Southern Eagle's knowledge of misclassification, in January 2020, Mr. King complained to Gary Penzato, Southern Eagle's Human Resources Manager, that he was

working too many hours as a warehouse worker and that he wanted to get paid by the hour as a warehouse worker.

46.

Gary Penzato told Mr. King that he would discuss his complaint with Nathan Dixon, who by then was Southern Eagle's Director of Warehouse & Facility Operations.

47.

At all material times, Southern Eagle was fully aware of how much Mr. King worked each week, with full knowledge that Mr. King's primary job duties required him to engage in manual labor for well over 40 hours each week.

48.

Despite Southern Eagle's knowledge, Southern Eagle failed to pay Mr. King overtime wages for hours worked over 40.

49.

Southern Eagle purposefully misclassified Mr. King as an exempt employee to avoid paying him overtime wages.

50.

No exemption excuses Southern Eagle from paying Mr. King overtime wages for hours worked over 40.

51.

Southern Eagle knew of its requirements to abide by the FLSA and did not make a good faith effort to comply with the FLSA.

52.

Southern Eagle's actions in misclassifying Mr. King as exempt and failing to properly compensate Mr. King for hours he worked over 40 constitute a willful violation of the FLSA.

53.

On January 27, 2020, Mr. King again complained to Nathan Dixon, then Southern Eagle's Director of Warehouse & Facility Operations, that he was working too many hours as a warehouse worker, that he was not getting paid as a warehouse worker for those numerous hours he worked, and that he was getting tired of it.

54.

At all pertinent times Mr. King complained to Southern Eagle and its representatives regarding their failure to pay him for the numerous hours he worked each week as a manual laborer, Mr. King held the good faith belief that Southern Eagle was not providing him adequate compensation under the law for his work over 40 hours each week.

55.

On January 30, 2020, just three (3) weeks after Mr. King complained to Southern Eagle's Human Resources Manager, Gary Penzato, about his rights under the FLSA, and just three (3) days after he voiced his complaint to Nathan Dixon, the person in charge of the entire warehouse operation at Southern Eagle, about his rights under the FLSA, Mr. Penzato and Mr. Dixon met with Mr. King to inform him that his employment with Southern Eagle was terminated.

56.

Southern Eagle knew that each of Mr. King's oral statements to Gary Penzato and Nathan Dixon about his rights under the FLSA constituted "a complaint" and was protected activity under the FLSA.

57.

Despite its knowledge that Mr. King engaged in protected activity under the FLSA, on January 30, 2020, Southern Eagle terminated Mr. King as a direct result of receiving his lawful complaints.

58.

Southern Eagle's actions in terminating Mr. King for engaging in protected activity constitute a retaliatory action in direct violation of the FLSA.

## COUNT ONE:
## VIOLATION OF THE FLSA FOR FAILURE TO PAY OVERTIME

59.

Plaintiff incorporates by reference and re-alleges each and every allegation contained above as though fully set forth herein.

60.

The FLSA applied to Plaintiff's employment with Defendant at all times relevant herein.

61.

Southern Eagle, and its representatives, directed the means and manner in which Mr. King was compensated. During the relevant time period, Southern Eagle violated the provisions of the FLSA by failing to pay Mr. King for not less than one and one-half times his regular rate of pay for any hours he worked in excess of 40 each week.

62.

Southern Eagle's failure to properly pay Mr. King was done so knowingly, willfully or in reckless disregard in carrying out its illegal pattern or practice. The decision by Southern Eagle not to properly pay overtime compensation to Mr. King was neither reasonable, nor in good faith. Accordingly, Mr. King is entitled to recover wages under the FLSA in an amount equal to not less than one and one-half times his regular rate of pay for any hours he worked in excess of 40 each week ("overtime"), plus liquidated damages in an amount equal to the unpaid compensation, attorney's fees and costs, under the FLSA's three-year statute of limitations.

63.

Mr. King does not fall within any exemption of the FLSA and was required to be paid overtime for any and all hours he worked in excess of 40 each week.

## COUNT TWO:
## VIOLATION OF THE FLSA FOR RETALIATORY DISCHARGE

64.

Plaintiff incorporates by reference and re-alleges each and every allegation contained above as though fully set forth herein.

65.

The FLSA applied to Plaintiff's employment with Defendant at all times relevant herein.

66.

Section 215(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), prohibits retaliation against an employee because he "has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the rights contained in the FLSA.

67.

As alleged above, Mr. King complained to Gary Penzato and Nathan Dixon in January 2020 about his rights under the FLSA.

68.

Each of Mr. King's oral statements to Gary Penzato and Nathan Dixon about his rights under the FLSA constituted "a complaint" and was protected activity under the FLSA. See *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011).

69.

On January 30, 2020, as direct result of receiving Mr. King's lawful complaints, Southern Eagle terminated Mr. King.

70.

Defendant's termination of Mr. King constituted a retaliatory action and violation of the FLSA, undertaken in direct response to Mr. King's assertion of workplace rights protected by the FLSA.

71.

As a direct, foreseeable, and proximate result of Defendant's actions, Plaintiff has suffered a loss of earnings and job benefits, and he has suffered and continues to suffer emotional distress.

**COUNT THREE:**
**VIOLATION OF LA. R.S. 23:631 - FAILURE TO PAY ACCRUED PAID VACATION**

72.

Plaintiff incorporates by reference and re-alleges each and every allegation contained above as though fully set forth herein.

73.

At the time of his termination, Plaintiff was deemed eligible for and had accrued the right to take vacation time with pay in accordance with Southern Eagle's stated vacation policy.

74.

At the time of his termination, Plaintiff had accrued fifteen (15) days of paid vacation.

75.

At the time of his termination, Plaintiff had not taken or been compensated for the paid vacation time he had accrued.

76.

On February 21, 2020, Plaintiff, through undersigned counsel, made formal demand for his unpaid vacation time (wages) and for penalties under La. R.S. 23:632.

77.

Despite amicable demand, as of the date of this filing Southern Eagle has failed to compensate Plaintiff for his unpaid vacation time (wages) and for the associated penalties under La. R.S. 23:632.

### DAMAGES AND ATTORNEY'S FEES

78.

Plaintiff is entitled to recover his unpaid overtime compensation.

79.

Plaintiff is entitled to recover lost wages due to Plaintiff and liquidated damages equal in amount to the unpaid compensation found due to Plaintiff for Defendant's retaliatory discharge of Plaintiff in violation of Section 215(a)(3).

80.

Plaintiff is entitled to additional amounts equal to his unpaid overtime compensation as liquidated damages. See 29 U.S.C. § 216(b).

81.

Plaintiff is entitled to recover his attorney's fees and costs.  See 29 U.S.C. § 216(b).

82.

Plaintiff is entitled to recover his unpaid vacation time in accordance with La. R.S. 23:631 and La. R.S. 23:632.

83.

Plaintiff is entitled to additional amounts in penalties in accordance with La. R.S. 23:632.

84.

Plaintiff is entitled to recover his attorney's fees.  See La. R.S. 23:632(C).

## CONSENT

85.

Mr. King has filed a Consent to initiate this litigation as a party plaintiff, as evidenced by his Consent form, which is attached hereto as Exhibit A.

## DEMAND FOR TRIAL BY JURY

86.

Plaintiff hereby demands a trial by jury herein on all claims.

## PRAYER FOR RELIEF

87.

**WHEREFORE**, Plaintiff, Jonathan King, prays that:

I.     Defendant Southern Eagle Sales and Service, L.P. is cited to appear and answer this Complaint for Damages and is served with a copy thereof;

II.     After due proceedings had and the lapse of all legal delays, there be judgment herein rendered in favor of the Plaintiff, Jonathan King, and against the Defendant, Southern Eagle Sales and Service, L.P., as follows:

    a.    Finding Defendant liable, pursuant to Section 16(b) of the FLSA, for unpaid overtime wages due to Plaintiff and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff;

    b.    Finding Defendant liable, pursuant to Section 16(b) of the FLSA, for lost wages due to Plaintiff and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff for Defendant's retaliatory discharge of Plaintiff in violation of Section 215(a)(3);

    c.    Finding Defendant liable, pursuant to La. R.S. 23:631 and La. R.S. 23:632, for his unpaid vacation time (wages) and for the associated penalties under La. R.S. 23:632;

    d.    Awarding Plaintiff the costs of this action;

    e.    Awarding Plaintiff attorneys' fees;

    f.      Awarding Plaintiff unpaid and lost benefits and compensation in connection with the FLSA violations;

    g.      Awarding Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law;

    h.      Awarding all compensatory and punitive damages as called for in the FLSA; and

    i.      Granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Jason Z. Landry*
**LAWRENCE J. CENTOLA, III (#27402)**
**JASON Z. LANDRY (#33932)**
**JEREMY J. LANDRY (#30588)**
**MARTZELL, BICKFORD & CENTOLA**
338 Lafayette Street
New Orleans, Louisiana 70130
Telephone:   (504) 581-9065
Facsimile:    (504) 581-7635
**Attorneys for Plaintiff**